IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 09-cv-01242-PAB-KMT

ELIZABETH L. SPARKS,

    Plaintiff,

v.

BLACK HAWK/JACOBS ENTERTAINMENT, LLC,
d/b/a The Lodge Casino at Black Hawk, a Colorado Limited Liability Company,

    Defendant.

_____

**ORDER**
_____

    This matter is before the Court on defendant's motion for summary judgment [Docket Nos. 27, 44]. The motion is fully briefed and ripe for disposition. Plaintiff brings this action pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, thus invoking the Court's federal question jurisdiction. *See* 28 U.S.C. § 1331.

**I. BACKGROUND**

    Unless otherwise indicated, the following facts are not in dispute. On November 16, 2004, plaintiff Elizabeth Sparks was hired to work as a bartender at The Lodge casino in Blackhawk, Colorado. Plaintiff's supervisors were Pam Robinson, Patty Mitchell, and Bruce Chesey. Plaintiff primarily reported to Pam Robinson. The supervisors reported to the manager of the Beverage Department, Ali Chiha. In addition to bartenders, The Lodge Beverage Department also employed cocktail wait staff and "barbacks." Barbacks are responsible for making sure the bars at The Lodge are sufficiently stocked at all times. While plaintiff was employed at The Lodge, she worked

with a barback named Adam Lehrke. Plaintiff, however, had no supervisory authority over Mr. Lehrke.

While plaintiff points out that there is no written policy regarding how to tip the barbacks, the common practice at The Lodge is for bartenders to tip barbacks between fifteen and twenty percent of the tips the bartender receives during those times when both the bartender and the barback are working. Ms. Robinson communicated this practice to plaintiff at the time plaintiff began working at The Lodge. Plaintiff contends that Mr. Lehrke told her that his usual tip was between three and five dollars.

At the end of her first ninety days on the job, plaintiff received a performance review that noted her willingness to take on additional duties as well as her professional attitude. Plaintiff's weakness was a difficulty arriving to work on time. Plaintiff received an Employee Counseling Notice ("ECN") on July 22, 2005 for attendance. She received another ECN for attendance on September 17, 2005.[1]

Plaintiff also had an interaction with a co-worker in September 2005 which caused that co-worker to cry. The co-worker wrote a statement for Ms. Mitchell describing the incident. *See* Docket No. 44-22 at 2. Ms. Mitchell, Ms. Robinson, and Mr. Chiha met with plaintiff and, during the meeting, Ms. Mitchell stated that plaintiff could be domineering and bossy.

On October 2, 2005, plaintiff delivered a letter to Bill Wall, who oversees human resources issues at The Lodge, complaining of the way Mr. Chiha spoke to her during

---

[1] In June 2005, Mr. Chiha and Ms. Mitchell counseled plaintiff regarding an incident where plaintiff ordered, without any authority to do so, a member of the wait staff to tend bar while plaintiff took a break.

the September 2005 meeting with Ms. Mitchell, Ms. Robinson, and Mr. Chiha.  *See* Docket No. 44-2 at 6-8.  Plaintiff informed Mr. Wall that she "was subjected to [Mr. Chiha's] loud, abrasive tone throughout" the meeting, "even though [she] made it quite clear that he needed to lower his voice."  Docket No. 44-2 at 7.  Plaintiff also complained to Mr. Wall that Mr. Chiha supervised other employees through intimidation, making wait staff cry and berating employees in front of customers.  Plaintiff mentioned that she would witness this conduct when Mr. Chiha would "come[] to the bar to talk, touch or hug" the female wait staff.  Docket No. 44-2 at 7.  Cindi Ruff, the Human Resources Director, received a copy of plaintiff's letter and asked Dave Silverman, the Corporate Director of Food and Beverage, to talk to Mr. Chiha.  Mr. Silverman did so, but did not tell Mr. Chiha that anybody had complained.[2]  Neither Ms. Robinson nor Mr. Chiha received a copy of plaintiff's letter.

After plaintiff had been working at The Lodge for ninety days, Mr. Lehrke complained to Ms. Mitchell that plaintiff was tipping him below what he received from other bartenders.  Mr. Lehrke created a spreadsheet reflecting the amounts he was tipped by The Lodge bartenders during the month of September 2005.  *See* Docket No. 44-4 at 3.  The spreadsheet indicates that the other bartenders tipped Mr. Lehrke between eight and twelve dollars, while plaintiff tipped him no more than six dollars.  Mr. Lehrke also complained about plaintiff interfering with his job duties.  On October 12, 2005, Ms. Robinson and Mr. Chiha addressed these issues with plaintiff.

---

[2]Plaintiff contends that Mr. Silverman provided Mr. Chiha with "enough information for Chiha to determine who had filed the complaint against him," Docket No. 28 at 7, ¶ 31, but cites no record evidence in support of that assertion.

In either October or November 2005, plaintiff spoke with a bartender at The Lodge named Dave Crise to find out how he calculated his tips for barbacks. Mr. Crise told her that he would divide his total tips for a shift by the hours he worked and then multiply that amount by the number of hours his shift overlapped with the barback. He would then give the barback fifteen to twenty percent of that amount. Plaintiff contends that she adopted this approach and that, when she would apply it, the amount would sometimes come out under five dollars. Plaintiff contends that Mr. Crise told her that he had tipped Mr. Lehrke less than five dollars. Mr. Crise, however, declares that he would generally tip Mr. Lehrke between ten and twenty dollars and "would have been embarrassed to ever tip Mr. Lehrke under $10, and never did so." Docket No. 44-9 at 3. In any event, plaintiff admits that Ms. Robinson, Ms. Mitchell, and Mr. Wall never received any complaints regarding Mr. Crise's tipping.

Mr. Lehrke, however, voiced continued concerns regarding plaintiff's tipping even after plaintiff's October 12, 2005 meeting with Ms. Robinson and Mr. Chiha. He reported to Ms. Mitchell that "on one occasion, Sparks tore up a dollar bill for Lehrke's tip, and on another occasion gave him three nickels." Docket No. 44-12 at 5, ¶ 18. Although plaintiff disputes that she engaged in such conduct, she does not dispute that Mr. Lehrke reported it to Ms. Mitchell. Nor does she cite any evidence that Ms. Mitchell disbelieved Mr. Lehkre's allegations.

Around November 18, 2005, plaintiff received another ECN which notified her that "[u]nsolicited statements from her co-workers indicate that Liz often . . . communicates in a disrespectful and rude manner" and "is considered domineering and bossy at times." Docket No. 44-2 at 5. Plaintiff disputes that she conducted herself in

the manner described in the ECN.  She cites no evidence, however, that Ms. Robinson, who delivered the ECN, did not receive such statements from plaintiff's co-workers or disbelieved them.  In mid-December 2005, plaintiff received another ECN regarding a complaint from a barback named Valerie Smith who claimed that plaintiff failed to tip her.  Plaintiff denies the allegation, but not that it was made to her supervisor.[3]

In the first week of 2006, Mr. Silverman received a letter from Lindsay Galloway, a member of The Lodge wait staff, complaining about rude comments by Mr. Chiha.  Mr. Silverman instructed Mr. Wall to investigate the complaint, which he did between January 12 and January 16.  Plaintiff submitted a letter "on behalf of Lindsay Galloway" that Mr. Wall received on January 18, 2006.  In her letter, plaintiff alleged, among other things, that if Mr. Chiha "is not yelling at you, he is sexually harassing you."  Docket No. 44-2 at 17.  Mr. Wall did not conduct any further investigation of Ms. Galloway's complaint after receiving plaintiff's letter.  Mr. Silverman, who received a copy of plaintiff's letter, counseled Mr. Chiha without revealing the source of the complaints

---

[3]Although plaintiff disputes the truth of the complaints made against her, their veracity is immaterial.  Rather, they are properly considered to show defendant's state of mind.  As a result, the ECNs describing such complaints are not hearsay. *See Kaur v. New York City Health and Hospitals Corp.*, 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010) (finding that personnel documents were not hearsay because they were "being offered to show the state of mind of Defendant's representatives in making various employment decisions with regard to Plaintiff" and that "the truth of the assertions in the documents is irrelevant"); *Wright v. Columbia Women & Children's Hosp.*, 34 F. App'x 151, 2002 WL 495325, at *3, n.15 (5th Cir. March 18, 2002) ("Wright is not correct that Willis's statement about complaints from doctors is hearsay. Evidence of the complaints is not being offered to show the truth of the content of the complaints, but rather to show that Willis thought Wright would have trouble interacting with doctors, a necessary function of the new management position.").

against him.[4]

Ms. Robinson issued another ECN to plaintiff on February 9, 2006 because she had received a complaint from Mr. Lehrke that plaintiff was interfering with his ability to do his job and continued to tip him insufficiently. Plaintiff was suspended as a result. Therefore, on March 24, 2006, plaintiff tipped Mr. Lehrke $1.10. As a result, Mr. Chiha and Mr. Wall issued her an ECN on March 30, 2006 which prominently indicated that the warning it provided was plaintiff's "LAST CHANCE."[5] The ECN informed plaintiff that her tipping practice "is a detriment to the team morale of the department" and "cannot continue." Docket No. 44-2 at 12. It further provided that the "next incident will result in termination." Docket No. 44-2 at 12. During a meeting regarding the ECN, Mr. Wall informed plaintiff that she must tip at least five dollars or tell a supervisor. Plaintiff received permission on at least two occasions after March 30, 2006 to tip less than five dollars.

On May 13, 2006, plaintiff again received an ECN from Ms. Robinson regarding her attendance. The ECN informed plaintiff that she "must acknowledge and understand that it is her responsibility to adhere to her schedule by arriving for work on time and working all scheduled shifts." Docket No. 44-2 at 13. That same day, plaintiff tipped Mr. Lehrke two dollars. Plaintiff contends that she notified a supervisor that she

---

[4]During plaintiff's employment with The Lodge, she and Ms. Galloway were not the only employees to complain about Mr. Chiha's communication style. Ms. Robinson submitted letters of complaint on November 19, 2004 and March 9, 2006. Three male warehouse workers also complained about Mr. Chiha. Due to these persistent complaints, The Lodge terminated Mr. Chiha's employment.

[5]The ECN also indicated that it was an "ABSOLUTE FINAL Written Warning." Docket No. 44-2 at 12.

6

would be tipping Mr. Lehrke two dollars.  Upon learning of the two dollar tip, Mr. Chiha informed Mr. Wall.  Mr. Wall decided to terminate plaintiff's employment.  Ms. Robinson and Ms. Mitchell concurred with that decision.

On June 6, 2006, plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commissions ("EEOC").  Plaintiff filed the present lawsuit on May 28, 2009, alleging that defendant discriminated against her and subjected her to a hostile work environment because of her gender and retaliated against her for complaining about Mr. Chiha's conduct.  Defendant seeks summary judgment.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee,* 119 F.3d 837, 839 (10th

Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  DISCUSSION

Plaintiff brings her claims pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Plaintiff contends that she was subjected to a hostile work environment and that her termination was motivated, at least in part, by her gender. She further argues that defendant retaliated against her for complaining about the harassment of her colleagues.  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Section 2000e-3(a) bans employers from retaliating against an employee because the employee has opposed such unlawful employment discrimination.

### A.  <u>Hostile Work Environment</u>

Defendant argues that plaintiff failed to exhaust the administrative remedies in regard to her hostile work environment claim.  In the Tenth Circuit, "[e]xhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (quoting *Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980)); *see DeWalt v. Meredith Corp.*, 288 F. App'x 484, 490 (10th Cir. 2008) ("Failure to exhaust administrative remedies . . . is a jurisdictional bar to

suit.").[6]  "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust."  *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

In order to have exhausted her claim, plaintiff must have "set forth the nature of the claim in sufficient detail that a reasonable reader would understand the charge to be asserting a hostile environment claim."  *Carrero v. Arapahoe County Sheriffs Office*, No. 05-cv-02414, 2006 WL 2594472, at *4 (D. Colo. Sept. 11, 2006) (citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1988); 29 C.F.R. § 1601.12(b)).  "To lay a factual foundation for a hostile work environment claim, [plaintiff] must allege facts indicating a workplace 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Mitchell v. City and County of Denver*, 112 F. App'x 662, 668 (10th Cir. 2004) (quoting *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (quotation omitted)).  With that said, plaintiffs are permitted to maintain claims that "can reasonably be expected to follow the charge of discrimination."  *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1187 (10th Cir. 2007) (quotation omitted).  The Court must "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim."  *Id.* at 1186.

In this case, plaintiff's EEOC Charge alleges that she suffered discrimination

---

[6]*Cf. De Walt*, 288 F. App'x at 490 (noting that, while the failure to exhaust implicated the Court's jurisdiction, the timeliness of exhaustion does not).

based upon her sex and retaliation.  She did not check the box indicating that the conduct constituted "Continuing Action."  She informed the EEOC that the discrimination occurred between November 2, 2005 and May 23, 2006.  Plaintiff provided the following description of the conduct underlying her Charge:

> [I.]  Beginning on or about November 2, 2005, I have been subjected to disciplinary actions including suspension. On or about May 23, 2006, I was terminated from my position as bartender.
> II.  I was told that the reason for the actions taken against me was because I was not properly tipping the bar back.
> III.  I believe I have been discriminated against due to my sex, female, and in retaliation, in violation of [Title VII] of the Civil Rights Act of 1964 as amended, inasmuch as:
> a. I believe I was performing my work satisfactorily.
> b. I began receiving disciplinary actions following my complaint on or about October 2, 2005, that the Food and Beverage Manager was inappropriately touching the cocktail waitresses.  The discipline progressed after my second complaint on January 13, 2006, addressing the same concerns.
> c. I followed the same tipping procedures as a male bartender, however, he was not disciplined or terminated from his employment as I was.

Docket No. 44-26 at 2.

Plaintiff contends that her Charge adequately raised her hostile work environment claim before the EEOC because it included the allegation that "the Food and Beverage Manager [Chiha] was inappropriately touching the cocktail waitresses" and made reference to her October 2, 2005 complaint letter.  *See* Docket No. 28 at 14.  This alone fails to give reasonable notice to the defendant that the plaintiff was alleging a hostile environment claim.  *See Carrero*, 2006 WL 2594472, at *4.  Plaintiff did not check the box on the EEOC Charge of Discrimination form indicating that the alleged conduct constituted "continuing action."  *See* Docket No. 44-26 at 2.  Instead, plaintiff contended that the discrimination occurred between November 2, 2005 and May 23,

2006. *See id.* The allegations plaintiff included in the narrative portion of the Charge of Discrimination and these dates focus on the alleged retaliatory conduct by defendant. The sum and substance of her Charge was that she witnessed misconduct by her supervisor, reported it, and therefore was disciplined and ultimately terminated.

"Although I am to liberally construe EEOC charges to determine whether administrative remedies have been exhausted, Plaintiff's claim that she was subject to a hostile work environment cannot reasonably be expected to follow in an investigation of the[se] acts . . . ." *Underwood v. GEO Group, Inc.*, No. 10-cv-00306-LTB-KLM, 2010 WL 2653316, at *3 (D. Colo. June 30, 2010) (citation omitted);[7] *see Carrero*, 2006 WL 2594472, at *5 (concluding that references to a "hostile work environment" in a supplement to an EEOC Charge of Discrimination were insufficient to exhaust administrative remedies because they were not "'sufficiently precise to . . . describe generally the action or practices complained of'") (quoting 29 C.F.R. § 1601.12(b)); *see also Hodge v. United Airlines*, 666 F. Supp. 2d 14, 22 (D.D.C. 2009) (finding that plaintiff failed to exhaust his hostile work environment claim despite referencing a "letter of har[]assment" he had sent to his employer because such "information [was] not specific or elaborate enough to allow the EEOC to infer the existence of a hostile work environment"). Because the Court lacks subject matter jurisdiction over this claim, the claim will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).[8] The

---

[7]In *Underwood*, the plaintiff alleged that she had "been subject to disciplinary actions, [had] been denied a promotion, and [had] been subjected to adverse terms and conditions which . . . created a hostile work environment." 2010 WL 2653316, at *2.

[8]*See Carter v. Mineta*, 125 F. App'x 231, 238 (10th Cir. 2005) ("The district court correctly determined that Plaintiff failed to exhaust her hostile-work-environment claim.

Court, therefore, cannot reach defendant's argument that it is entitled to summary judgment on the merits of plaintiff's hostile work environment claim.

### B. Gender Discrimination

Plaintiff argues that she was disciplined and terminated because of her gender. Because plaintiff presents no direct evidence of discrimination on account of sex, the Court must apply the burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The first step of that analysis requires that plaintiff identify evidence supporting a prima facie case of gender discrimination. Plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class." *Percy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007).[9] The parties do not dispute that plaintiff has met the first three elements of a *prima facie* case.

---

The court should have dismissed this claim for lack of subject-matter jurisdiction, and we will modify its judgment accordingly.") (citation omitted).

[9]A prima facie case can also "consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)); *see id.* at 800, n.5 ("There exists some tension in our case law regarding what a plaintiff must establish as part of his or her prima facie case of discrimination. Some cases treat circumstances suggestive of discrimination as an element of a prima facie case; other cases treat the surrounding circumstances as part of the analytically subsequent inquiry into the employer's stated reason for the challenged action and the plaintiff's opposing demonstration of pretext. *Sorbo*, 432 F.3d at 1173 & n.5 (listing cases). Regardless of whether we analyze the plaintiff's evidence 'in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result.' *Id.* at 1173.").

In support of the fourth element, plaintiff contends that she was treated differently than a male bartender who tipped in the same manner that she did.  Plaintiff, however, identifies no evidence in support of that contention.  Rather, she "disputes the assertion that Crise 'generally' tipped Lehrke between $10.00 and $20.00" because "Lehrke told her his tips were usually between $3.00 and $5.00."  Docket No. 28 at 17.  She does not explain, however, how this dispute is material to her claim of gender discrimination.  Even assuming Mr. Crise tipped Lehrke between $3.00 and $5.00, plaintiff admits that "Robinson, Mitchell and Wall never received any complaints about Crise's tipping, and never had the need to issue any counseling to him based on his tipping behavior."  Docket No. 44 at 3, ¶ 13; Docket No. 28 at 3, ¶ 13.[10]  Plaintiff identifies no evidence that she was treated less favorably than her male colleague or that "the challenged action took place under circumstances giving rise to an inference of discrimination."  *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).  Therefore, defendant is entitled to summary judgment on plaintiff's gender discrimination claim.

### C. Retaliation

Plaintiff also contends that her termination was in retaliation for her complaints about Mr. Chiha.  To make out a prima facie case of retaliation, a plaintiff must establish three elements: "'(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action.'"  *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1264-65 (10th Cir. 2007) (citation

---

[10]Furthermore, this tipping range is higher than the typical tips plaintiff gave to Mr. Lehrke.

omitted).  Defendant contends that plaintiff's letters did not constitute protected employee action.  The Court, however, need not resolve that issue because there is no evidence that would permit a jury to find a causal connection between plaintiff's complaints about Mr. Chiha and her termination by Mr. Wall.

The Tenth Circuit has stated that a causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (quotations and citations omitted).  However, "[u]nless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation."  *Id.*  Here, plaintiff contends that her October 2, 2005 and January 13, 2006 letters constituted protected activity.  Mr. Wall, however, did not terminate her until May 23, 2006, more than four months after the January letter.  Standing alone, "[f]our months is too large a time gap to establish a causal connection."  *Proctor v. United Parcel Service*, 502 F.3d 1200, 1208 (10th Cir. 2007); *see Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) ("[W]e have held that a three-month period, standing alone, is insufficient to establish causation.").

Plaintiff must identify additional evidence supporting an inference of retaliatory motive.  Plaintiff does not dispute that Mr. Wall's belief that she had tipped less than five dollars without permission constitutes a legitimate non-discriminatory and non-retaliatory reason for her termination.  Rather, she argues that Mr. Chiha "fed incomplete information to Wall, causing him to terminate Sparks."  Docket No. 28 at 20.  She argues that this can form the basis of defendant's liability, relying upon the Tenth

14

Circuit's decision in *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476 (10th Cir. 2006). In *BCI*, the Tenth Circuit favorably cited decisions of other circuits finding that an employer could be liable if "a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action;" or (2) "a decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate." *Id.* at 484. Plaintiff, however, identifies no evidence either that Mr. Chiha used Mr. Wall "as a dupe" or that Mr. Wall gave "perfunctory approval" to any explicit recommendation by Mr. Chiha.

Even assuming Mr. Chiha was capable of so influencing Mr. Wall's investigation or decision, there is no evidence that Mr. Chiha had any knowledge of plaintiff's complaints. *See Denetclaw v. Thoutt Bros. Concrete Contractors, Inc.*, 287 F. App'x 17, 24 (10th Cir. 2008) ("To establish a causal connection between filing his EEOC charge and his termination, Mr. Denetclaw must show that Mr. Spahn knew of his protected activity when he fired him.") (citing *Jones*, 502 F.3d at 1195). Plaintiff contends that Mr. Chiha had opportunities to find out about her complaints. Much like in *Denetclaw*, where the plaintiff averred that the decision maker "could have heard" about his complaint, plaintiff's "argument on this point is not based on reasonable inferences; it is based on speculation." *Denetclaw*, 287 F. App'x at 24.[11] "To support a jury verdict,

---

[11] Plaintiff also contends that she began receiving more ECNs after submitting her letters. The record does not reflect this change. She received an ECN every one to two months from July 2005 until her termination in May 2006. In any event, there is no evidence, and plaintiff does not argue in response to defendant's motion, that the complaints made about her tipping conduct or that her difficulty with attendance had any connection to her complaints about Mr. Chiha. *Cf. PVNF*, 487 F.3d at 800 ("[A] written

15

evidence must be based on more than mere speculation, conjecture, or surmise." *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999); *see* Fed. R. Civ. P. 56(e). In short, because plaintiff identifies no evidentiary link between her complaints about Mr. Chiha and the complaints, discipline, and ultimate termination she experienced, summary judgment is appropriate on plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the defendant's motion for summary judgment [Docket Nos. 27, 44] is GRANTED in part. It is further

**ORDERED** that defendant is entitled to summary judgment on plaintiff's claims for gender discrimination and retaliation. It is further

**ORDERED** that plaintiff's hostile work environment claim is dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). It is further

**ORDERED** that judgment shall enter in favor of defendant and against plaintiff. It is further

**ORDERED** that the trial preparation conference set on January 14, 2011 and the trial on January 31, 2011 are VACATED.

DATED November 30, 2010.

---

warning is an adverse employment action 'only if it effects a significant change in the plaintiff's employment status.' ") (quoting *Haynes v. Level 3 Commc'ns.*, LLC, 456 F.3d 1215, 1224 (10th Cir. 2006)) (emphasis removed).

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge